

|  |  |  |
|---|---|---|
| JEROME ENTERPRISES, LLC,<br>an Illinois limited liability co., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 07 C 5550 |
| GSJ COMPANY, LLC d/b/a DUNMORE | ) | Judge John W. Darrah |
| COMMUNITIES, a California limited liability co.;<br>DUNMORE CAPITAL, LLC, a Delaware limited<br>liability co.; SID DUNMORE, a California individual;<br>JEREMY DUNMORE, a California individual; and<br>SILAR ADVISORS, LP d/b/a SILAR CAPITAL, a<br>Delaware limited partnership, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerome Enterprises, LLC, filed suit against GSJ Company, LLC d/b/a Dunmore Communities; Dunmore Capital, LLC; Sid Dunmore; Jeremy Dunmore; and Silar Advisors, LP d/b/a Silar Capital, alleging breach of contract and unjust enrichment. Originally filed in the Circuit Court of Cook County, Illinois, this matter was subsequently removed to this Court. Presently pending before this court is Defendants' Motion to Dismiss. No response has been filed.

## BACKGROUND

A reading of Plaintiff's Complaint supports the following summary of the alleged conduct of the parties:

GSJ Company, LLC d/b/a Dunmore Communities is a land development company owned and operated by Sid Dunmore and Jeremy Dunmore (collectively, the "Dunmores"). Dunmore Capital is a private equity fund started by the Dunmores. In January 2007, Dunmore Capital

solicited Jerome Enterprises, LLC ("Jerome") to help attract sufficient capital for one of its funds. Subsequently, the Dunmores solicited Jerome's help with Dunmore Communities', as well as their own personal, finances. In exchange for Jerome's services, the Dunmores, Dunmore Capital, and Dunmore Communities (collectively, the "Dunmore Defendants") orally agreed to pay all of Jerome's expenses, as well as a $15,000 initial advance for those expenses, and also to provide Jerome with a profit participation agreement, personally guaranteed by the Dunmores in the amount of $3 million, entitling Jerome to a 25 percent share in all future profits from a particular portfolio. Additionally, Jerome executed a "Confidentiality Agreement" with Dunmore Capital and Dunmore Communities by which Dunmore Capital and Dunmore Communities agreed, among other things, not to establish an independent relationship with any entity introduced to the Dunmores by Jerome, including Silar Capital ("Silar"), in attempt to circumvent the agreement.

Based on the Dunmore Defendants' promises of compensation, Jerome continued to work with the Dunmore Defendants through its principal, Chris Jerome ("Chris"). During this time, Jerome sought to introduce Silar as a potential investor to Dunmore Capital and Dunmore Communities; but before doing so, Jerome and Silar agreed that Silar would pay Jerome a percentage of any profits Silar earned in any deal with Dunmore Capital and Dunmore Communities. Additionally, Jerome executed a "Confidentiality Agreement" with Silar by which Silar agreed, among other things, not to establish an independent relationship with any entity introduced to Silar by Jerome, including the Dunmore Defendants, in attempt to circumvent the agreement.

2

On or about June 1, 2007, Silar entered into a deal with Dunmore Communities to invest approximately $10 million. Jerome was unaware of and uninvolved in the deal. Jerome was never compensated for his services according to the agreements made with the Dunmore Defendants and Silar.

In establishing a relationship with Silar, making the investment deal unbeknownst to Jerome, and failing to compensate Jerome for his services as agreed, the Dunmore Defendants breached the Confidentiality Agreement and the oral compensation agreement, causing Jerome damages in excess of $500,000 (Count I). Similarly, in participating in the investment deal with Dunmore Communities and in failing to compensate Jerome for his services as agreed, Silar breached the Confidentiality Agreement and the oral compensation agreement, causing Jerome damages in excess of $100,000 (Count II). Finally, the Dunmore Defendants and Silar have enjoyed substantial financial benefits brought about through the efforts of Jerome and at Jerome's expense, resulting in unjust enrichment (Count III).

## ANALYSIS

Defendants seek to dismiss Jerome's Complaint for the following reasons: (1) lack of personal jurisdiction, (2) improper venue, (3) failure to allege a claim relating to the Confidentiality Agreements, (4) Plaintiff's claims violate California law, and (5) Plaintiff's claims are barred by the Statute of Frauds.

Where personal jurisdiction is challenged by a defendant, the plaintiff bears the burden of demonstrating its existence. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (*RAR*). "When [a] district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff

need only make out a *prima facie* case of personal jurisdiction." *Perdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003), quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). A court may look to affidavits and exhibits submitted by each party in determining whether jurisdiction exists. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (*Turnock*). The allegations in the complaint are taken as true unless controverted by the defendant's affidavits, and any conflicts in the affidavits submitted by the parties are resolved in favor of the plaintiff. *See Berthold Types Ltd. v. European Mikograph Corp.*, 102 F.Supp.2d 928 (N.D. Ill. 2000), citing *Turnock*, 816 F.2d at 333. The Defendants have filed a memorandum and supporting personal declarations regarding the absence of personal jurisdiction; Plaintiff has not responded.

A federal district court in Illinois has jurisdiction over a non-resident defendant only if an Illinois state court would have jurisdiction over that defendant. *See RAR*, 107 F.3d at 1275. A plaintiff must also show that the exercise of personal jurisdiction over the defendant comports with due process under the Fourteenth Amendment of the United States Constitution. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833-34 (N.D. Ill. 2000) (*Euromarket*).

A plaintiff can assert either general or specific personal jurisdiction over a non-resident defendant. *RAR*, 107 F.3d at 1277. "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contact' with the forum state." *RAR*, 107 F.3d at 1277. Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the

4

defendant's contact with the forum.'" *RAR*, 107 F.3d at 1277, quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 486 U.S. 408 (1984). Defendants argue that none of them are subject to either general or specific personal jurisdiction in Illinois.

Both Plaintiff's Complaint and Defendants' affidavits agree that none of the Defendants are Illinois residents. Both Dunmore Communities and Dunmore Capital are Delaware limited liability companies and have their principal places of business in California. Sid and Jeremy Dunmore are both residents of California and the sole members of Dunmore Communities, as well as the sole members of S&J Company, LLC, which is the sole member of Dunmore Capital. Silar Capital is a Delaware limited partnership and has its principal place of business in New York. All Silar Capital's partners are residents of either New York or New Jersey.

Although Plaintiff's Complaint alleges that the Defendants transact business in the State of Illinois and that the contracts at issue were made in Illinois, it does not allege any continuous and systematic contacts by Defendants with Illinois. Defendants have submitted the declaration of Jeremy A. Dunmore, which states that Dunmore Communities and Dunmore Capital have no employees, offices, telephone listings, bank accounts, or property in Illinois and have not developed any property outside of California; nor have they provided any goods or services directly to Illinois customers. Additionally, Defendants have submitted the declaration of Robert L. Leeds, CEO of Silar Advisors. Leeds' declaration states that Silar has no employees, offices, telephone listings, bank accounts, property, or direct investments in Illinois. Since Plaintiff's Complaint provides no facts to the contrary, these declarations show that none of the Defendants can be said to have continuous or systematic general business contact with Illinois; therefore, Defendants cannot be subject to general personal jurisdiction in Illinois.

5

The Fourteenth Amendment Due Process Clause permits a court to exercise specific personal jurisdiction over a non-resident defendant only if the defendant has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940); *Neuman & Assoc. v. Florabelle Flowers,* 15 F.3d 721, 725 (7th Cir.1994). In order to find such minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). The critical inquiry is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled to court in the forum state." *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In a breach of contract case such as this, "it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR,* 107 F.3d at 1278, quoting *Vetrotext Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 153 (3rd Cir. 1996). The mere existence of a contract between an in-state party and out-of-state party is not enough to establish specific jurisdiction; "rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *RAR,* at 1277, quoting *Burger King,* 471 U.S. 462, 478 (1985).

In this case, while Plaintiff's Complaint alleges that the contracts at issue were made in Illinois, Plaintiff alleges no other facts to show the parties negotiated the contracts or had any dealings whatsoever in Illinois. In fact, the Complaint indicates that Chris Jerome's work took

6

place in an office at Dunmore Communities, presumably in California. Defendants contend that all discussions between Plaintiff and the Dunmore Defendants took place in California and that the Confidentiality Agreement between Plaintiff and the Dunmore Defendants was signed in California. Jeremy Dunmore has attested to these facts in his declaration. Further, Defendants state that all of the negotiations between Plaintiff and Silar were done in-person in California or by telephone or e-mail and that the Confidentiality Agreement between Plaintiff and Silar was initially faxed from Dunmore Communities' California office to Silar's office in New York. Both Leeds' declaration and Plaintiff's Exhibit B to the Complaint support this fact.

Plaintiff's failure to allege any specific facts to support his contention that the contracts at issue were made in Illinois, along with Defendants' declarations that all dealings among them took place in California, over the phone, or via e-mail, show that Defendants did not purposefully establish minimum contacts with Illinois such that Defendants could reasonably anticipate litigation here. Further, the contracts at issue have no substantial connection with Illinois. Since Plaintiff has failed to establish either general or specific jurisdiction over Defendants, this Court need not reach the additional arguments raised by Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is granted.

Dated: February 28, 2008

JOHN W. DARRAH
United States District Court Judge

7